## ANNE B. JEFFERS, HESTER A. HARWOOD et al. *vs.* THE MAYOR, COUNSELLOR AND ALDERMEN OF THE CITY OF ANNAPOLIS et al.

*Title of Statute—Power of Municipal Corporation to Authorize Laying of Railway Tracks on the Streets—Prior Legislative Authority in Amendment of Railway Company's Charter — Interurban Street Railway Not an Additional Servitude.*

The title of the Act of 1900, ch. 307, is: An Act to change the name of the Potomac and Severn Electric Railway Company, and to grant certain additional powers and privileges to said corporation, and to confirm certain franchises and privileges granted to said coporation by the Mayor, etc.. of Annapolis. The body of the Act, after changing the name of that company, granted to it additional powers, and provided that all the righs which might thereafter be granted to the company by any county or municipality should be as effectual as if said grant had been expressly ratified by the General Assembly. *Held*, that all the provisions of the Act relate to the subject matter described in the title and that the Act is not in violation of the Constitution, Article 3, sec. 29, which requires that the subject of every Act shall be embraced in its title.

The charter of an electric railway company incorporated under Code, Art. 23, provided that it should pass through the city of Annapolis. The Act of 1900, ch. 307, changed the name of the company and provided that by the new name it should exercise all its former powers and also that all the franchises thereafter granted by any municipality to the company should be as effectual as if expressly ratified by an Act of Assembly subsequent to the granting thereof. An ordinance of the City of Annapolis conferred upon the company the right to lay its tracks upon certain streets upon prescribed conditions. *Held*, that this ordinance is valid nnder the Act of 1900, since that Act is a proper delegation of legisiative power and gave express authority to the municipality to grant the franchise.

A municipal corporation has authority to grant to an electric street railway company the right to lay its tracks upon the streets, under Code, Art. 23, sec. 255, which enacts that it shall be competent for the municipal authority having charge of streets and roads and a railway company operating in a prescribed manner and desiring to occupy such streets, to agree upon the manner and conditions upon which the same may be occupied.

No additional servitude is imposed from the streets of a city by the grant of a franchise to use the streets to an interurban electric railway which passes through the streets and runs on to other cities.

*Decided per curiam, December 4th, 1907. The following opinion was filed January 15th, 1908.*

Appeal from the Circuit Conrt for Anne Arundel County (ROGERS, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and BURKE, JJ.

*James M. Munroe*, for the appellant.

*Ridgely P. Melvin*, for the Mayor, etc., of Annapolis, appellee.

*Geo. Weems Williams* (with whom were *Frank Gosnell* and *Robert Moss* on the brief), for the Washington, Baltimore and Annapolis Electric Ry. Co., appellee.

PEARCE, J., delivered the opinion of the Court.

A *per curiam* opinion was filed in this case December 4th, 1907, affirming the decree of the Circuit Court for Anne Arundel County, by which the demurrer to the bill of complaint was sustained, and the bill was dismissed, and we will now state the reasons, with some reference to the authorities, which led to our conclusion.

The Mayor, Counsellor and Aldermen of the City of Annapolis, by a municipal ordinance passed June 21st, 1907, and by an amendment thereto, passed July 2nd, 1907, granted to the Washington, Baltimore and Annapolis Electric Railway Company, the privilege or franchise to lay a single railway track over and upon certain designated streets in said city "with the right to perform any work, and to do any manner of things which may be necessary or proper, in order to construct upon said streets the single track as herein provided and the connections connecting the same in accordance with the provisions of this ordinance."

The consideration for this franchise was the agreement of the said railway company to pay to the Mayor, Counsellor, and Aldermen of Annapolis, in quarterly installments in each year, a tax of 4½ mills for every passenger above the age of 12 years, and of 2 7-10 mills for every passenger between the ages of 4 and 12 years carried over said tracks within the city limits, for a whole or part trip within the existing city limits, or as the same should be extended from time to time, whether said tracks be upon private way or city streets, and provided that the revenues under said ordinances should never be less than $500 per year.

Provision was also made by said amended ordinance against a monopoly of said streets by said railway company, by reserving to the city the right to grant the use of said streets to any other corporation for any purpose whatsoever, and by a stipulation that said railway company, should, after three years from the passage of said ordinance, permit any other railway company, not using steam as a motive power, to use its tracks upon payment of reasonable compensation to be determined as provided in said ordinance.

The railway company accepted the said ordinance and began the construction of tracks upon the streets of said city,

The plaintiffs below, property owners upon the line of the proposed route, allege in their bill that the ordinance above mentioned is *ultra vires* and null and void, and prayed that it be so declared, and that the Mayor, Counsellor and Aldermen of Annapolis be restrained by injunction from approving any plans submitted to them for the construction of said railway, or from permitting the railway company to enter upon said streets, and that the railway company be restrained by injunction from the construction of said tracks, or any work connected therewith.

The railway company answered the bill, but the city of Annapolis demurred to it, and the demurrer was sustained, and the bill dismissed as to said city.

In addition to the oral arguments and briefs of the appellants, and of the Mayor and City Council, we have had the benefit of an elaborate brief of the able counsel of the railway company, to all of which we have given full consideration.

It is contended for the appellee in this case that the legislative authority for the ordinance in question is supplied through three separate channels.

1st. Through the general control over its streets delegated by the Legislature to the city.

2nd. Through the provisions of ch. 307 of 1900, and ch. 361, of 1902, which ratify and confirm all privileges and franchises, granted, or to be granted, by the city of Annapolis to the appellee.

And 3rd. Through the provisions of sections 255 and 256 of Art. 23 of the Code of Public General Laws of Maryland, authorizing railroad companies, operated by electricity, cable, or other improved motive power, and municipal corporations through which their roads may pass, to agree upon the conditions upon which streets and alleys of said municipal corporations may be used or occupied by such railroad companies, when necessary for their corporate purposes.

When express authority can be found for the exercise of

delegated power, that alone should be invoked, and we shall therefore not consider the question of implied power to pass. this ordinance, and shall confine ourselves to the express authority which in our opinion is disclosed by the record.

The Potomac and Severn Electric Railway Company was chartered under the general incorporation law of Maryland on May 19th, 1899, and the charter provided "that the termini of said railroad shall be a point on or near the eastern boundary of the District of Columbia, and a point in, or contiguous to, the city of Annapolis on the Severn river, and that the said railroad shall pass through the counties of Prince George and Anne Arundel, and the city of Annapolis." The Act of 1900, ch. 37, changed the corporate name of the Potomac and Severn Electric Railway Company to the "Washington and Annapolis Electric Railway Company," and enacted that by that new name it should hold all the property, enjoy all the rights, and exercise all the powers possessed by said corporation under its former name.

The Act of 1902, ch. 361, again changed the name of this corporation from "Washington and Annapolis Electric Railway Company," to "Washington, Baltimore and Annapolis Electric Railway Company," and enacted that it should under that new name hold and exercise all the rights possessed under its former name.

No question is made as to the validity of this last Act, but it is claimed by the appellants that chapter 307 of 1900, is unconstitutional and void, first, because it violates sec. 29 of Art. 3 of the Constitution of Maryland which provides that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title;" and second, because, as it is alleged, it undertakes by anticipation to ratify and confirm in advance, any and all rights, powers, privileges and franchises which might be in the future granted to said railway company, by any county, municipality, or the proper officers thereof. The title of that Act is as follows: "An Act to change the name of the Potomac and Severn Electric Railway Company, and to grant certain additional

powers and privileges to said corporation and to confirm certain franchises and privileges granted to said corporation by the Mayor, City Counsellor and Aldermen of the City of Annapolis."

The preamble of this act recites that certain privileges and franchises had been therertofore granted by the Mayor, Counsellor and Aldermen of Annapolis to said corporation by its former name for which grants it was desirous of obtaining *absolute legal* sanction; and that in order to the successful operation of said corporation, it was necessary it should be vested with certain additional rights, powers, privileges and franchises. It then proceeded to change the name as above stated, and to grant certain additional powers and privileges, such as the right to lease its property and franchises to any connecting, but not parallel, line of electric railway, or to lease other connecting, but not parallel, lines of electric railway; to manufacture and sell electric light and power, and to operate telegraph or telephone lines along its railway.

Section 10, enacts "that any and all rights, powers, privileges or franchises whatsoever which may hereafter be granted or extended to said railway company, by any county, municipality, or the proper officers thereof, shall be as effectual and binding upon the said counties or municipalities so granting the same, as if said grant of powers, rights, privileges or franchises, had been expressly ratified and confirmed by Act or Acts of the General Assembly of Maryland subsequent to the granting thereof."

In *Baltimore City* v. *Flack*, 104 Md. 114, in considering the requirements of section 29 of Art. 3 of the Constitution, CHIEF JUDGE McSHERRY, speaking for the Court, said: "This declaration of the organic law has been before the Court of Appeals in no fewer than forty-five cases since its incorporation into the Constitution of 1851; and in less than one-fourth of these instances has an Act of Assembly been stricken down by reason of its being in conflict with that provision. It is only the *subject* of the Act which must be described in the title, and neither the details of the legislation, nor the means

or instrumentalities by which the subject is to be carried into effect, constitute the subject of the Act.   *   *   *   When the cases in which it has been held that legislation was invalid, because in conflict with section 29 of Article 3 of the Constiution, are examined, it will be found, either that something wholly repugnant to the title, or something altogether foreign to the subject described in the title had been attempted to be incorporated in the body of the Act, in flagrant disregard of the principle announced in *Davis* v. *State*, 7 Md. 161. * * * All the cases in our reports show that this Court has never leaned towards a narrow interpretation of sec. 29 of Article 3 of the Constitution, and we are unwilling now after the lapse of more than half a century since the decision of *Davis* v. *The State* to bring, by a strained construction, under the penalty of its prohibiton, statutes which are not within the obvious evils and mischiefs that its adoption as part of the organic law was designed to obviate."

Those evils and mischiefs were thus described in *Davis* v. *The State:* "A practice had crept into our system of legislation, of·engrafting upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction, and actually vote for, such provisions, which, if offered as independent provisions, would never have received their support.   Besides, foreign matter matter has often been stealthily incorporated into law during the haste and confusion always incident upon the close of all legislative bodies, and it has not infrequently happened that in this way the statute books have shown the existence of enactments that few of the members of the Legislature knew anything of before.   To remedy such and similar evils was this provision inserted in the Constitution and we think wisely." ·

In the Act now under consideration the subject matter of legislation was the charter of an electric railway company, embracing its name, powers, privileges and franchises.

Every section of the Act refers to, and is germane to, the

subject matter described in its title, and where this is the case, the title need not give an abstract of the contents of the Act, nor need it mention the means and methods by which the general purpose is to be accomplished.  *Baltimore* v. *Reitz,* 50 Md. 574.

The first section merely changed the corporate name.

The second section confirmed to the corporation by its new name, certain franchises and privileges previously granted by the authorities of the city of Annapolis to the corporation by its former name, the corporation desiring to avoid any possible question upon that point as affecting the value of their securities when issued and placed upon the market.  This would seem to be so plain as to preclude question.  But if questioned it has been settled in *Mayor, &c., of Annapolis* v. *State,* 30 Md. 119.  There the corporation had, without authority of law, closed up an alley.  An Act of the Legislature was subsequently passed entitled, "An Act to amend and alter the charter of the city of Annapolis."  In it there was contained a provision making valid the defective proceedings.  This was held to be a constitutional exercise of power on the part of the Legislature, and the provision itself not foreign to the subject matter declared in the title of the law.

All the other sections of the Act now before us relate to the additional powers and privileges which the title states it is the purpose to grant.

Of these, only the tenth section, which we have already quoted in full, is attacked as undertaking to ratify in advance all powers and privileges thereafter granted to the railway company by any county or municipality, through which said railway passes, under the provisions of its charter.  This is nothing more nor less than a delegation of legislative power to the municipal subdivisions of the State through which the railway passes and in which it operates; the granting of express authority to such municipalities to grant franchises to that railway company in its discretion.  It is one of the plain and natural modes of granting "additional powers and privileges," stated in the title of the Act to be one of the purposes of its

passage.    This delegation of Legislative power is illustrated in the relation of the State to every county and town in the State, constituting a municipal corporation, and the exercise of the power so to delegate authority is written large upon the records of every legislative session.

We can discover no ground upon which this Act, or any section thereof, can be held to be unconstitutional.

But apart from the Act of 1900, ch. 307, the Mayor and City Council of Annapolis was abundantly authorized to pass the ordinances granting the franchises now in question.

Section 255 of Art. 23 of the Code of 1904, enacts that "if it shall be necessary in the location of any railroad, to occupy any road, street, alley or public way or ground of any kind, it shall be competent for the municipal, or other corporation, or public officer, or public authorities, owning or having charge thereof, and the railroad company, to agree upon the manner, and upon the *terms and conditions* upon which the same may be used or occupied," and then provides, if the parties shall be unable to agree, how the company may proceed by condemnation proceedings, to appropriate so much of said street, road, alley, public way or public ground as may be necessary for the purposes of such road.    Section 256 provides that sec. 255 shall apply to all roads operated by electricity, cable, or other improved motive power, and whether incorporated under the provisions of Art. 23, or by a special Act.    The record in this case shows that this railway company was by its original charter authorized to construct a railroad and operate the same under the provisions of Art. 23, sec. 158 to 204, inclusive, of Code 1888 (now sections 242 to 300, inclusive of Code of 1904), and that said railroad was *required* to pass through the counties of Prince George and Anne Arundel and the *City of Annapolis.*    The ordinances in question therefore when duly passed by the authorities of the city of Annapolis, and duly accepted by said railway company as shown by the record constituted the best evidence obtainable of the agreement provided for by sec. 255 of Art. 23, and of the terms and conditions upon which the streets of the city of Annapolis were to be used by said railway.

It being settled in this State that the use of electricity for propelling street cars is only a new and improved motive power, and that its use does not impose a new servitude upon the streets so as to entitle abutting lot owners to additional compensation (*Koch* v. *North Avenue R. R. Co.*, 75 Md. 222), the plaintiffs in this case are not entitled to restrain by injunction the construction of this railway, and must resort to a proceeding at law for any incidental or consequential injury or damage resulting from its construction or operation.

It was contended for the plaintiffs that this railway is not a street railway, or even a suburban railway, but an interurban railway, and that as such it imposed an additional servitude upon the streets of the city, and the city could grant no franchise which could be effective as against these plaintiffs. But no authority was produced for this position, and we have found none.

In *Poole* v. *Falls Road Railway Co.*, 88 Md. 553, the railway company which was sought to be enjoined was to run from a certain point within the city of Baltimore to Mount Washington in Baltimore County, but that fact was not allowed to affect the decision that no new servitude was imposed upon the streets of the city, and it is difficult to conceive how   .   . such a consideration could affect the question.

In *Newell* v. *Minneapolis, Lyndale and Minnetonka Railway Co.*, 35 Minn. 112, the Court said: "If it is in fact, a passenger street railway within the city limits, how can it become anything else *there*, because it becomes something else *elsewhere?* \* \* \* It cannot be that a proper use of the streets of the city can be made improper by the fact that the instrumentalities through which that use is enjoyed, are changed as respects their mode of operation after the city boundaries are passed over, or that the use of the streets of a city for the purpose of going out of it, or coming into it, can be improper or illegitimate, or in any sense the imposition of a servitude additional to the ordinary street easement." This was said in a case where a narrow guage was operated by a steam motor in the city, and by locomotives beyond the city boundary, the line

going to a town eighteen miles from Minneapolis, while in the case before us the motive power and the cars are the same within and without the city. We find no ground for any distinction in regard to this franchise, between electric railways operating wholly within the city streets, and those running over the same streets but also connecting the city with another city or with suburban towns.

For the reasons assigned the decree was affirmed.