ALBERT S. GILL, Trustee in Bankruptcy of B. Kahn & Bros. Company, a Corporation,

*vs.*

DAVID ASH and ISIDORE ASH,

and

SAME

*vs.*

SAME and LAURA ROSALIE WILKINSON.

*Directors of corporations: liability to creditors.*

There must be a breach of duty by the directors of a corporation, and an injury therefrom resulting, before they can be held personally liable.  .                                             p. 619

*Decided January 13th, 1915.*

Two appeals from Circuit Court No. 2 of Baltimore City. (Ambler, J.)

The causes were argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Samuel J. Fisher,* for the appellant.

*David Ash,* for the appellees.

Burke, J., delivered the opinion of the Court.

This is an appeal from an order of the lower Court sustaining demurrers filed by the appellees to the whole amended bill of complaint, and dismissing the bill with costs.

The bill was filed by the appellant, as Trustee in Bankruptcy of B. Kahn & Bros. Company against David Ash and Isidore Ash, who were at one time directors of the bankrupt corporation, to recover the sum of three thousand two hundred dollars alleged to be the assets of the corporation, and

which were paid out to various persons under the circumstances hereinafter stated.

The corporation was adjudged bankrupt on the 18th day of September, 1913, by the United States Court for the District of Maryland, and the appellant was elected trustee, and qualified and filed the required bond, and was authorized by an order of that Court to institute this suit.

It appears from the allegations of the bill that prior to August, 1908, a partnership business was conducted by Benjamin and Bernard Kahn, trading as B. Kahn & Bros. who were subsequently adjudged bankrupts, and the stock, fixtures, book accounts and good will of the business were sold to the firm of Lewis Baer & Co.

On August 19, 1908, B. Kahn & Bros. Company was incorporated with a capital stock of ten thousand dollars, divided into two thousand shares of the par value of five dollars each, and immediately after its organization it purchased from Lewis Baer & Co. the assets of the bankrupt concern of B. Kahn & Bros., for seventy-five per cent of the capital stock of the newly organized company, which was conducted from the date of its organization until July 19, 1910, by a Board of Directors composed of Lewis Baer, president, Solomon Baer, vice-president, Moses Baer, secretary-treasurer, and Benjamin Kahn, manager, none of whom received a salary, except Benjamin Kahn, who was paid thirty-five dollars per week.

On the 19th of July, 1910, the number of directors was reduced from five to three, and David Ash, Isidore Ash and Benjamin Kahn were elected directors, and the business of the corporation was conducted by these directors *until January 27, 1913.* Benjamin Kahn acted as business manager of the corporation and the Messrs. Ash took charge of all its legal and financial affairs.

Differences arose between the Messrs. Baer and Benjamin Kahn as to the proper methods of conducting the business and the policy of its management, which finally resulted in Kahn attempting to purchase the holdings of the Baers, in

order to rid himself of them as directors and officers of the corporation, so that he could manage the business in his own way and in accordance with his own policies. Kahn was the owner of two hundred and fifty shares of the capital stock of the corporation, and the Baers were the holders of the balance of said stock. Kahn had no money with which to purchase the holdings of the Baers, and he employed David and Isidore Ash, the appellees in this case, to enter into negotiations with the Baers for the purchase of their stock, to procure a loan sufficient to purchase the same, and to advise him in the premises.

The Messrs. Ash opened negotiations with the Baers, the result of which was that the latter on June 29, 1910, sold their entire holdings to Benjamin Kahn for seven thousand dollars,—two thousand dollars of which was to be paid in cash, and the balance was to be paid by two promissory notes, dated June 29, 1910—one for one thousand dollars, and one for four thousand dollars, payable in weekly instalments of twenty-five dollars each, said notes to be signed by Benjamin Kahn and Lena Kahn, his wife. In order to pay the necessary cash consideration, the Messrs. Ash negotiated a loan of two thousand dollars for Benjamin Kahn from Arthur Le Grice Wilkinson and Laura Rosalie Wilkinson, his wife, upon the following terms, to wit: That Kahn should deliver to them a promissory note payable to them and the survivor of them, for the sum of twenty-two hundred dollars, with interest, payable in the following manner: Eight hundred dollars on January 10, 1911, eight hundred dollars on January 10, 1912, and six hundred dollars on January 10, 1913.

On June 30, 1910, an agreement was entered into between Benjamin Kahn and David Ash which was filed with the bill as a part thereof. In this agreement Kahn obligated himself to assign, set over, and transfer to David Ash seventeen hundred and fifty-five shares of the capital stock of the B. Kahn & Bros. Co., a body corporate, and upon compliance with the terms, agreements, covenants and conditions therein set forth said capital stock should be transferred by Ash, his

heirs, personal representatives and assigns to Benjamin Kahn, his heirs, personal representatives, assigns or nominees. He further agreed: (1) To pay the two promissory notes, dated June 29, 1910, of one thousand dollars, and four thousand dollars respectively, payable to the order of Moses Baer. (2) To pay a promissory note, dated June 30, 1910, for twenty-two hundred dollars, payable to the order of Arthur Le Grice Wilkinson and Laura Rosalie Wilkinson, his wife, and the survivor of them. (3) To pay three promissory notes, dated June 30, 1910, payable to the order of Isidore Ash and David Ash, for four hundred dollars, and two hundred dollars, and two hundred and ninety dollars, respectively. (4) To give a true and verified statement of the affairs of B. Kahn & Bros. Co. to David Ash, between the first and fifth day of each month, until said capital stock shall have been returned as aforesaid. The fifth, sixth, seventh and ninth clauses of the agreement have an important bearing on this controversy, and are here transcribed:

"5. I agree that the cost price of the stock in trade as represented by said stock in trade and good installment leases shall not be less than one hundred and fifty per cent. of the aggregated indebtedness of said B. Kahn & Bros. Co. and myself, excepting, however, my indebtedness on certain mortgage notes given concurrently with a certain mortgage hereinafter referred to.

"6. I agree that at no time during the continuance of this agreement shall the total face value of installment leases held by said B. Kahn & Bros. Co. exceed sixty-six and two-thirds per cent. of the cost price value of the stock in trade of said body corporate; unless written permission is given by David Ash to the contrary.

"7. I agree that at no time during the continuance of this agreement shall the total cost price value of goods on consignment either to said body corporate or myself exceed thirty per cent. of the cost price of the

stock in trade of said body corporate; unless written permission is given by David Ash to the contrary.

"9. I agree that at no time during the existence of this contract shall the indebtedness of said body corporate be in excess of thirty-five hundred dollars."

It was further provided that Benjamin Kahn should be elected president and general manager of the corporation, his term to last during the continuance of the agreement and as such was to receive a weekly salary of seventy-five dollars for his services, and in addition thereto an additional salary of fifteen hundred dollars to be paid between the fifth and tenth day of each January during the continuance of the agreement, provided, however, that the said Benjamin Kahn should fully comply with the terms and conditions of the agreement. No dividends were to be declared or paid on the capital stock of the corporation during the continuance of the agreement.

The bill alleges that the agreement was carried out to the extent that the Messrs. Baer received two thousand three hundred and forty dollars on account of the notes which they received in part payment of the stock as hereinfore set out; that Laura Rosalie Wilkinson received twenty-two hundred dollars, the amount stipulated in the promissory note given to her, and her husband, amounting in the aggregate to twenty-five hundred and twelve dollars; that the Messrs. Ash received eight hundred and ninety dollars, the amount of the promissory notes payable to them; that when the second eight hundred dollar payment to the Wilkinsons fell due, the B. Kahn & Bros. Co., did not have sufficient funds to pay the same and said note was renewed for another year by the Wilkinsons with the understanding that the note should be increased two hundred dollars, which amount, in addition to the legal rate of interest, was paid to Laura Rosalie Wilkinson for said additional time.

The ninth and tenth paragraphs of the bill are as follows:

"9th. That all of said sums of money, and especially the amount of money paid to David Ash and Isidore

Ash, to wit, the sum of eight hundred and ninety dollars, and the amount paid to Messrs. Lewis Baer & Co., to wit, the sum of twenty-three hundred and forty dollars, was paid to them out of the assets of B. Kahn & Bros. Company, while said defendants were directors of said corporation, upon their advice, at their direction and in accordance with said agreement filed herewith as Complainant's Exhibit 'C'; that said defendants had full notice and knowledge that the money which was paid to them and to Messrs. Baer as hereinbefore set forth, was to be paid and actually was paid out of the corporate assets of said B. Kahn & Bros. Company, which notice and knowledge said defendnats had at and before the times when said payments were made; that each of said defendants had full notice and knowledge that said payments were to be made, and actually were made in accordance with the terms of the agreement filed herewith, as Complainant's Exhibit 'C'; that said defendants knew that the salary of Benjamin Kahn was increased as herein stated for the purpose of furnishing him with funds to purchase the holdings of the majority stockholders of said corporation, and to pay Messrs. Baer and Messrs. Ash the amounts due them as herein set forth.

"10th. That all of said sums of money paid to David and Isidore Ash and the Baers were illegally and wrongfully withdrawn from the assets of said B. Kahn & Bros. Company in that said sums of money were withdrawn and used for the purpose of purchasing the stock of said corporation, in order to rid it of some of its stockholders, directors and officers who were obnoxious to the others, and in that said money was withdrawn for the purpose of paying the individual debts of Benjamin Kahn; that no part of said money so withdrawn was used to pay any debts due by said corporation or for any other corporate purposes; that the salary of Benjamin Kahn was increased for the purpose of making it appear that he and not the corporation was paying for the stock purchased from

the Baers; that Benjamin Kahn did not in fact draw
or receive any larger salary than he received when the
Baers were directors of said corporation; that said in-
creases in the salary of Benjamin Kahn were paid by
the corporation out of its assets to David and Isidore
Ash to the extent of eight hundred and ninety dollars,
to Messrs. Baer to the extent of twenty-three hundred
and forty dollars, and to Laura Rosalie Wilkinson to
the extent of twenty-seven hundred and twelve dollars,
in compliance with the terms of the contract with
Benjamin Kahn and David Ash filed herewith as
Complainant's Exhibit 'C,' all of which was fully
and completely known by said defendants; that the
entire transaction was in substance the use of corpor-
ate assets to purchase its own stock, and to pay indi-
vidual debts, and the form of the transaction was sim-
ply an attempt on the part of the defendants to avoid
such a conclusion."

It is alleged that the assets of the corporation were reduced
to the extent of the amounts of money paid to the defendants
and Messrs. Baer; that the liabilities of said bankrupt, B.
Kahn & Bros. Company, are twelve thousand dollars, and the
total assets will not amount to fifty-five hundred dollars when
reduced to cash. The prayer of the bill is that the defend-
ants David and Isidore Ash, and each of them be required
to bring into this Court and pay to your orator the sum of
thirty-two hundred and thirty dollars and interest,—that
being the aggreate amounts paid themselves and the Messrs.
Baer under the circumstances before set out.

It appears from the facts stated (and they constitute all
the material and essential allegations of the bill) that full
and stringent provisions were made to protect and maintain
the solvency of the corporation, and it is not alleged that at
the time the agreement was entered into or at any time dur-
ing its existence or during the time the defendants were di-
rectors of the corporation that there were any creditors of
the corporation. There is no charge that any one suffered

loss in consequence of the purchase of the stock and the payment of the money sought to be recovered from the appellees. The corporation was adjudged bankrupt more than three years after the acts complained of, and about eight months after the appellees ceased to be directors, and, if it be conceded that those acts were illegal, there is nothing in the bill to show that the bankruptcy was in the remotest degree induced by the acts alleged. There is nothing to show that the capital stock was reduced by these acts. There must be a breach of duty and an injury resulting therefrom before a recovery can be had. This is elementary. The duties and liabilities of directors have been repeatedly declared in decisions by this Court. *Booth* v. *Robinson,* 55 Md. 419; *Shaw* v. *Davis,* 78 Md. 308; *DuPuy* v. *Terminal Co.,* 82 Md. 408; *Fisher* v. *Parr,* 92 Md. 245; *Acker Merrill & Co.* v. *McGaw,* 106 Md. 536; *Carrington* v. *Bassher,* 118 Md. 419; *Penn. R. R. Co.* v. *Minus,* 120 Md. 461, and other cases.

In affirming the order appealed from we do not impair the authority of these cases, because the allegations of the bill do not state a case which imposes upon the defendants a personal liability. In view of the conclusion we have reached it is unnecessary to discuss other objections to the bill urged by the appellees.

*Order affirmed, with costs to the appellees.*

---

BURKE, J., delivered the opinion of the Court.

This suit was brought to recover the sum of twenty-seven hundred and twelve dollars paid to Laura Rosalie Wilkinson under the circumstances stated in the opinion in the case of *Gill, Trustee in Bankruptcy,* v. *David Ash and Isidore Ash, ante.* The facts in this case are identical with those in that, and for the reasons stated in the opinion in that case the order appealed from will be affirmed.

*Order affirmed, the appellant to pay the costs.*

*Decided January 13th, 1915.*