STATE v. TITLE GUARANTEE & TRUST COMPANY
APPEAL OF JAMES E. HANCOCK ET AL.
[No. 56, January Term, 1935.]

*Decided March 6th, 1935.*

The cause was argued before PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Ralph Robinson* and *Isaac Lobe Straus,* with whom was *William Milnes Maloy* on the brief, for the appellants.

*William L. Marbury, Jr.,* for John G. Ghingher, Receiver of the Title Guarantee and Trust Company.

*Washington Bowie, Jr.,* and *Harry E. Karr,* with whom was *Jesse N. Bowen* on the brief, for the Fidelity and Deposit Company of Maryland, the Consolidated Gas Electric Light and Power Company, and the Fidelity Trust Company, interveners.

*Randolph Barton, Joseph Addison,* and *Clarence A. Tucker,* submitting on brief, for the Board of Directors of the Title Guarantee and Trust Company, proponents of the plan of reorganization.

PARKE, J., delivered the opinion of the Court.

The two appeals on this record bring up for review the action of the chancellor in dismissing the objections to the plan of reorganization and of reopening of the Title Guarantee & Trust Company, that were made by James E. Hancock and other depositors of that corporation, and in later passing a decree approving the plan; and, consequently, involve a consideration of these acts in connection with the provisions of chapter 529 of the Acts of 1933.

On February 20th, 1933, the State of Maryland filed its bill of complaint against the Title Guarantee and Trust Company for the appointment of a receiver for the defendant corporation. The defendant appeared and answered on the institution of the proceedings, and the state bank commissioner was immediately appointed receiver on the bill and answer. The receiver proceeded with the discharge of his duties, and the record discloses that, in the course of his administration, at least several plans of reorganization of the corporation were submitted, considered, and discussed. Eventually, George Forbes, the chairman, and seven members, of a committee who acted in behalf of a group of depositors, and Edgar G. Miller, Jr., a depositor, filed in the cause, on February 12th, 1934, a petition which recited the failure of a particular effort to agree on a plan of reorganization, and expressed a conviction that any further effort would be futile, and prayed that the chancellor should direct the receiver to proceed at once with the liquidation of the

corporation, and should appoint a special counsel to scrutinize the conduct of its corporate affairs by its officers and directors as stated in a report made to the petitioners by their counsel, William Milnes Maloy, and to make known to the court in what respect, if any, such officers and directors had incurred a legal liability by their acts.

The Maloy report was filed with this petition and was, also, filed as part of the subsequent petition of James E. Hancock and seventeen other depositors. This second petition was filed in the cause on November 15th, 1934. Hancock and three of the other petitioners had united in the first petition, and the second petition was filed for the benefit of not only the original petitioners, but also any other depositors of the same class who might thereafter join in the petition.

The object of this petition was to have the chancellor refuse to approve a proposed plan of reorganization of the corporation, which the petitioners anticipated would be subsequently submitted to the court for approval; and to direct and require the receiver (a) to enforce the statutory liability of the stockholders of the corporation on their corporate stock; (b) to enforce by appropriate suits and proceedings the alleged respective statutory liability of the directors and stockholders for the declaration and payment of unearned dividends upon the stock of the corporation for the years 1928 to 1932, both inclusive; and (c) to enforce against the directors the amounts for which they might be liable for losses sustained by reason of their neglect and default in the discharge of their official duties. On their petition, eight other depositors came in and made themselves parties to the petition of James E. Hancock. On November 17th, 1934, Raymond M. Duvall, who was a party to both the prior petitions, filed a separate petition in which he dissented from the proposed plan of reorganization and elected to take, and applied to the court for the ascertainment of, the fair liquidated value of his claim as a depositor, and requested the payment thereof in cash. At the conclusion of his petition, Duvall stated that his dissent

and election were an alternative to the relief prayed in the petition filed on November 15th, 1934.

The anticipated plan of reorganization, and the proceedings had in respect to its adoption, were filed in the cause on December 3rd, 1934, in the form of a petition and report of the receiver. By these documents it was made certain that the board of directors of the Title Guarantee & Trust Company had proposed a plan for the reorganization and reopening of the company, and for the establishment of the Title Mortgage & Management Company; that the plan was filed with the bank commissioner of Maryland, pursuant to the provisions of article 11 of the Code of Public General Laws, as amended by the Acts of 1933, ch. 529, of the General Assembly of Maryland; that the board of directors of the Title Guarantee & Trust Company had certified to the bank commissioner, that notice of the approval of the plan and a summary of its terms had been mailed to all depositors and creditors of the company at their respective addresses as shown by its books; and that on October 17th, 1934, the bank commissioner of the State of Maryland, under and by virtue of section 9C of article 11 of the Code of Public General Laws of Maryland, as added by chapter 529 of the Acts of 1933, had, after study and investigation, approved the plan of organization as submitted by the board of directors of the company, and that a notice to the company's stockholders, depositors, and other creditors of this approval and of the fact that a copy of the plan had been filed with the bank commissioner and was open for inspection in his office or in the office of the receiver, had been duly published in two daily newspapers of Baltimore City. The first publication was on October 19th and the last on November 2nd. The receiver, who under the law is the bank commissioner, called the court's attention to the circumstance that the depositor who had objected to the plan and elected to take the liquidated value of his deposit represents an amount of less than one-half of one per centum of the deposit liability of the company, and that the other depos-

itors who have objected to the legality and propriety of the plan have an aggregate deposit of less than four per centum of such deposit liability.

The receiver further reported that under the plan of reorganization the present stockholders were required to subscribe not less than $250,000 to the new common stock to be issued according to the plan, but that this amount had not been subscribed, and suggested that, if the court adopt the plan, it should make it subject to the requirement that the full amount of said stock subscription of $250,000 be obtained within ten days from the date of the approval. The report, also, stated that the Reconstruction Finance Corporation might decline to make the loan provided for in the plan until the final termination of all litigation arising out of the petitions of the depositors, and that this litigation might be protracted, and that, therefore, the receiver recommended that, if the court should approve the plan, the condition should be prescribed that the Reconstruction Finance Corporation express its willingness to make the loan notwithstanding the pending litigation.

In addition to the prayer for the chancellor's approval of the plan, the receiver requested the passage of an order fixing and determining the present cash value of the interest of Raymond M. Duvall on the basis of a judicial liquidation of the company: and of such orders as the chancellor might deem proper with respect to the plan and the termination of the receivership.

On this state of the pleadings, the chancellor passed his decree on December 17th, 1934, wherein he affirmed that, "counsel having agreed that said report should be treated as in the nature of a demurrer to the petition aforesaid" of James E. Hancock and certain other depositors, he had, after full argument and consideration, dismissed the petition mentioned. An appeal was taken from this decree and also from the decree passed on January 2nd, 1935. After reciting that the legal prerequisites to an adjudication had been met: that the full sum of $250,000 had been paid on account of

the new stock to be issued under the plan; that Raymond M. Duvall, who had a claim as depositor in the sum of $13,305.74, had applied to the court for the ascertainment of the fair liquidation value of his claim; that no other depositor or unsecured creditor had made a similar application; that the plan of reorganization had been submitted for his approval; and that James E. Hancock and certain other depositors had objected to the approval being granted on the ground that the plan was illegal, but had requested the court to direct the receiver to institute certain suits and proceedings against the stockholders and directors of the company—the chancellor declared in this second decree that, after due consideration and hearing, the plan is authorized by section 9C, as added by chapter 529 of the Acts of 1933, and is proper and reasonable and should be approved. After these preliminary recitals, the chancellor decreed that the plan be approved, but reserved the right to revoke this approval and allowed ninety days from December 7th, 1934, to the Reconstruction Finance Corporation to effect the loan contemplated by the plan. The court further reserved for future determination the matter of attorney fees covering the reorganization of the company; the question of the apportionment of such fees as between stockholders and depositors or any of them; and the termination of the receivership, which was reserved until the liquidation value of the dissenter to the plan is fully determined.

Upon petitions, the Fidelity & Deposit Company of Maryland, the Consolidated Gas, Electric Light & Power Company of Baltimore, and the Fidelity Trust Company, which were largely interested either as depositor, creditor, or stockholder, and which all severally favored the plan of reorganization, were allowed to intervene and become parties to the extent of the proceedings relative to the plan of reorganization and the objections to this plan.

The two decrees of the chancellor were made upon the papers and proceedings in the cause, and any doubt with reference to what effect was to have been given to the factual statements made by the pleadings could have been

well dispelled by a written agreement, but none was made. In the chancellor's first decree, however, the statement appears that, by agreement of counsel, the report of the receiver "should be treated as in the nature of a demurrer to the petition" of James E. Hancock and others. As this is evidently the assumption made in the passage of both decrees, all the well pleaded allegations of fact in this petition will be taken as true.

The plan of reorganization which was approved by the chancellor is necessarily a lengthy instrument, and even a summary of its provisions would entail a statement that would contain numerous terms which would not be pertinent to the questions raised on this record. So, in the consideration of this case, only those provisions which relate to the controversy at bar will be stated, since the general scheme of the projected reorganization follows common lines, and presents no objectionable features of equitable cognizance.

The petitioners do not assail the constitutionality of chapter 529 of the Acts of 1933 nor of any of its parts. See *Nagel v. Ghingher*, 166 Md. 231, 171 A. 65; *Bowles v. M. P. Moller, Inc.*, 163 Md. 670, 164 A. 665; *Homer v. Crown Cork & Seal Co.*, 155 Md. 66, 141 A. 425. They attack the plan as invalid and illegal on the ground that the plan is not within the contemplation of the act mentioned, and, if so, its provisions are so inequitable to the unsecured depositors and creditors that the chancellor's approval is not within the exercise of a sound judicial discretion, and should be reversed. The questions raised have been presented and argued with zeal and ability, and it remains for the court to state the reasons for its conclusions.

1. The petitioners maintain that the statute does not authorize the plan of reorganization of the Title Guarantee & Trust Company nor its approval by the bank commissioner.

The corporation was created by chapter 425 of the Acts of 1884, with the name of the Maryland Title Insurance & Trust Company, and was empowered to examine titles

to property and to guarantee or insure owners and mortgagees of real or leasehold property against loss by reason of defective title, liens, or other encumbrances; and to guarantee and insure the fidelity of fiduciaries. The powers so granted by the act of incorporation were greatly enlarged by chapter 663 of the Acts of 1894, which enacted an additional section 8, authorizing the corporation, *inter alia,* to have all the powers of a natural person to buy, sell, lease, or otherwise acquire and hold real and personal property, to lend money upon real or personal security, to borrow money for its corporate purpose, to receive money on deposit, to collect ground rents, interest on mortgages, dividends of all kinds, and to have the management and custody of all kinds of property upon such terms as it may arrange. Upon the grant of these further corporate powers the act made the corporation subject at all times to the terms of chapter 109 of the Acts of 1892, providing for the examination and report at stated times of trust, guaranty, loan, and fidelity companies, and the deposit of prescribed securities in a defined amount with the treasurer of the State for the protection of depositors; and of chapter 279 of the Acts of 1892, preventing any corporation, which shall act in certain fiduciary capacities without bond or security other than its own obligation, incurring the liability of a surety upon any bond of any sort or description. The name of the corporation was changed to Title Guarantee & Trust Company, and its directorate was authorized to be increased to not more than twenty-five members, by chapter 118 of the Acts of 1900. By chapter 321 of the Acts of 1920, the original Act of 1884, ch. 425, incorporating the company under the name of the Maryland Title Insurance & Trust Company, was further amended by the addition of a section 9, conferring upon the corporation, whose name had been changed by amendment to its present corporate designation, all the powers given to trust companies under article 11 of the then Annotated Code of Public General Laws (vols. 1, 2, 3, and 4, Acts 1912, ch. 21, 1914, ch. 16, 1918, ch. 144) or under any

additions thereto or amendments thereof. The last amendment of the charter has reference to the corporate directors and is found in chapter 367 of the Acts of 1924. All of these amendments are to the original Act of 1884, chapter 425, which created the corporation, and their titles specifically describe the one subject embraced by the enactment and so comply with section 29 of article 3 of the Constitution of Maryland, and are not in violation of sections 33 and 48 of the same article. *Phinney v. Sheppard-Pratt Hospital*, 88 Md. 633, 637-639, 42 A. 58; *Jackson v. Walsh*, 75 Md. 304, 311, 314, 23 A. 778; *Hodges v. Baltimore Union Pass. Ry. Co.*, 58 Md. 603, 620; *Gans v. Carter*, 77 Md. 1, 8-10, 25 A. 633; *Brown v. Md. Telephone & Telegraph Co.*, 101 Md. 574, 582, 61 A. 338; *Jeffers v. City of Annapolis*, 107 Md. 268, 68 A. 553. Neither is the legislation within the denunciation of sections 33 and 48 of article 3 of the Constitution, because the powers granted were either not obtainable under the general incorporation law then in force or were more extensive than by general statute provided. Code, art. 11 and art. 23; Const. art. 3, sec. 48; *Hodges v. Baltimore Union Pass. Ry. Co.*, 58 Md. 603, 620, 621; *Reed v. Baltimore Trust & Guarantee Co.*, 72 Md. 531, 532-535, 20 A. 194; *Mealey v. City of Hagerstown*, 92 Md. 741, 743-747, 48 A. 746.

It follows, from this review of the statutes, that the Title Guarantee & Trust Company was, in the exercise of its corporate powers, both a bank and a trust company when on February 20th, 1933, the State of Maryland filed the bill of complaint to have the court assume jurisdiction over its property and business for final liquidation. Code, art. 11, secs. 8 and 9, 51, 52. While the receivership under those proceedings was subsisting, article 11 of the Code of Public General Laws, title "Banks and Trust Companies," subtitle "Bank Commissioner," was amended by chapter 529 of the Acts of 1933, which became effective on April 21st, 1933. Section 9C of this enactment provides that: "Whenever the Bank Commissioner is in possession of any banking institution, as receiver, he may per-

mit it to reopen upon such conditions as he may approve, and take such steps as may be necessary to wind up any court proceeding which may be pending."

By section 51 of article 11, every trust company, no matter how incorporated, is granted the powers, and is made subject to the provisions, of this article, with certain reservations, which are here immaterial, with respect to any special rights, privileges, or powers under its charter, if the company were organized and doing business prior to April 8th, 1910. And section 52 declares that the words "banking institutions," as used in article 11, shall be held to mean incorporated banks, savings institutions, and trust companies. Since the Title Guarantee & Trust Company was both a bank of deposit and a trust company, and its affairs were in the possession of the bank commissioner, section 9C was applicable, and the bank commissioner had the power to permit the Title Guarantee & Trust Company to reopen upon such conditions as he might approve. It is, therefore, no legal objection to the proposed plan of reorganization that the company, while having and retaining the right under its charter to function as a bank of deposit under conditions prescribed by law, will, by permission of the bank commissioner and the approval of the chancellor, reopen with its corporate business limited for the present to title insurance, general trust and safe deposit business, and the management service of real estate. The condition imposed with respect to corporate activities is well within the statutory authority conferred, and hence is not a tenable objection to the plan of reorganization.

2. Section 9C expressly empowers the board of directors of a banking institution, as defined by section 52 of article 11 of the Code, or its depositors who represent not less than twenty-five per centum of its deposit liability, to propose a plan for the reorganization and reopening of such banking institution and such other corporations as may be deemed necessary, and may select a committee to represent them for the purpose of carrying such plan into effect. No other qualification is required than that the

proponents of the plan be either the board of directors, or the depositors who represented not less than one-fourth of the deposit liability of the banking institution. The Legislature was aware that any corporation within the scope of this legislation would probably go into the hands of the receiver while in charge of the board of directors that would be authorized to formulate and submit a plan, but nevertheless the enactment did not require that the directors, whom the Legislature realized were pecuniarily and might be personally concerned in the adoption of the plan, should have discharged their prior duties agreeably to law, and without official fault or neglect. The single and sole test required by the statute was that the plan be the proposal of the board of directors of the banking institution. The court has no power to erect or interpolate other qualifications; and, even if the allegations of the petitioning depositors be taken as true by force of the agreement on which the proceedings were submitted to the chancellor, the charge of the petition that this board of directors had committed certain unlawful acts which had resulted in the insolvency of the financial institution under the board's government, and, further, that the plan contemplated a reorganization which would exempt the members of the board of directors from financial liability for their wrongful or negligent acts, and the stockholders from (a) the restitution of dividends improperly declared and paid and (b) the payment of their statutory liability equal to the par value of their shares of stock severally held, the law made it mandatory upon the bank commissioner to receive and file the plan and then to make such study and investigation of the plan as the bank commissioner should deem necessary. The plan so prepared and submitted is examined, weighed, and judged with reference to its merits, the public convenience and welfare, and the interests of all parties concerned. In accordance with his findings, the bank commissioner approves or rejects the plan. In the case at bar, he approved and gave public notice in the newspapers of his approval; and the banking institution gave to all its depositors and creditors the speci-

fied notice of the approved plan, with a summary of its important provisions, and where the plan was open for inspection. After the expiration of thirty days from the first publication, and if less than one-third in interest of the depositors and other unsecured creditors have filed within this period an election to take the fair liquidation value of their claim or other interest instead of approving of the plan, the chancellor is, under section 9C, obliged to pass upon the plan, and, if he comes to that conclusion, may pass an order approving the same and fixing the terms and conditions upon which the receivership may be terminated.

A very small number of depositors, whose aggregate deposits were less than four per centum of the total deposit liability and the number of whose accounts was but 21 as against a total of 7,343 accounts, objected to the plan, and only one depositor, who had previously united in the petition of James E. Hancock and others, elected, in the event his objections failed, to take, as an alternative, the liquidation value of a deposit which was less than one-half of one per centum of this deposit liability of the company. The bank commissioner, after investigation and study, had given the plan his approval, and the Reconstruction Finance Corporation, a federal agency in aid of financial recovery, had expressed its approbation by tentatively agreeing to make the reorganization feasible by a loan of $1,235,012. These facts, which indicated the acceptance of the plan by a great preponderance of those financially concerned in the formulation of a just, fair, and practical plan for the reorganization and reopening of the company, were persuasive and weighty grounds in support of the plan, and furnished convincing evidence of a consensus of opinion, by those financially concerned, that the plan subserved the best interests of the depositors and creditors. The approval by the chancellor may, therefore, be said to be in accord with the deliberate judgment of a decisive majority of depositors, creditors, and stockholders, that has been expressed in the manner contemplated by the statute.

Section 9C, as added by chapter 529 of the Acts of 1933, has application to those cases where a court of equity has assumed jurisdiction over the affairs of a financial institution, and appointed a receiver to administer its affairs under the supervision, direction, and control of the chancellor. The approval by the bank commissioner, *qua* commissioner, of a plan of reorganization of a financial institution in receivership in equity, is not the approval of the chancellor; and a court of equity, while acting pursuant to the terms of the act in approving or disapproving the plan submitted, is nevertheless acting in the exercise of its equitable jurisdiction, and its final decree may, therefore, be made the subject of an appeal, in which the chancellor's approval may be reviewed.

Since the plan may not be submitted to the chancellor unless the indicated conditions precedent are fulfilled, and particularly so with respect to the absence of the prescribed percentage of dissent to the plan on the part of the depositors and other unsecured creditors, and to the approval of the bank commissioner, a public official charged with that duty and possessing or commanding the requisite technical skill, information, and knowledge of finance, the approval of the chancellor should prevail, unless it clearly appear that it would work a manifest, substantial, and preponderant pecuniary loss to any of the classes of interests involved, by reason of some inequitable provision that would make the chancellor's approval an abuse of judicial discretion. It does not appear from the record that these conditions for a reversal exist. The intrinsic merit of the proposed plan is independent of the alleged wrongful and negligent acts of the board of directors in the management of the corporate affairs, and in the declaration and payment of unearned dividends before the receivership. Nor is there point in the suggestion that the members of the old board will constitute the board of directors of the reorganized corporation, since the stockholders control the selection of directors, and the plan expressly provides

that the board of directors for the first year, and until their successors are elected and qualified, shall be eleven in number, and states that it is planned to have the personnel include outstanding men in different lines of business, subject to the provision that for a certain ensuing period the members of the board of directors, the officers, and employees of the reorganized company, shall at all times be acceptable to the Reconstruction Finance Corporation.

3. The plan contemplates the surrender by the stockholders of all the outstanding stock of the corporation for cancellation, and the collection of the sum of not less than $250,000 from stockholders on their liability by reason of their ownership of the stock. The amount is slightly over forty per centum of the par value of all outstanding stock at the time of the receivership, and is based upon the amount believed by the proponents of the plan to be collectible. It does not satisfactorily appear on the record that a larger net sum would be realized by an attempted universal enforcement of the statutory liability against the stockholders. Such matters lie in sound judgment. A choice between the relative advantage of liquidation, with an enforcement of statutory liability of the stockholders, and a reorganization of the corporation, with the immediate payment of a certain sum of money that is much less than the par value of the outstanding stock, involves various and numerous countervailing considerations that rest in opinion. Conflicting views on this subject are not sufficient to nullify the chancellor's choice in this particular.

The argument that the liability of the stockholders on their shares of stock should be applied exclusively for the benefit of the creditors, and, therefore, the stockholders who pay their statutory liability and receive one-half thereof in terms of the new capital stock of the reorganized corporation acquire a status superior to the depositors and general creditors, does not seem well founded, in view of the facts (1) that the depositors and creditors are benefited by the money paid in by the stock-

holders and are to be paid at once not less than thirty per centum in cash, and the difference between this payment and one hundred per centum of their claims in certificates of beneficial interest of that amount in a holding company, which is to be created for the gradual liquidation of the assets of the original company that are not acquired by the reorganized company for value; and (2) that any depositor, creditor, or other party in interest who may believe the plan to be to his disadvantage in this or any other respect, and has not approved the plan, has the right, within thirty days from the first publication of the required notice of the proposed plan, to apply to the court where the receivership is pending "for the ascertainment of the fair liquidating value of his claim, or other interest," and the court shall, upon his application, "determine the present cash value of such objecting parties' interest on the basis of a judicial liquidation." Acts 1933, ch. 529, sec. 2, adding sec. 9C to the Code.

The provisions mentioned assure to the unsecured creditor his primary right to the assets of an insolvent corporation that remain after the satisfaction of lienholders and other preferred creditors, and, under the circumstances, afford him an adequate opportunity and means to secure the full enjoyment of his preference over the stockholder, within the contemplation of the principle invoked by the petitioners and its application. *Kansas City Terminal Rwy. Co. v. Central Union Trust Co.*, 271 U. S. 445, 455, 456, 46 S. Ct. 549, 70 L. Ed. 1028, 1031, 1032; *Louisville Trust Co. v. Louisville N. A. & C. R. Co.*, 174 U. S. 674, 683, 684, 689, 19 S. Ct. 827, 43 L. Ed. 1130; *Northern Pac. R. Co. v. Boyd*, 228 U. S. 482, 501, 508, 33 S. Ct. 554, 57 L. Ed. 931.

In ascertaining the present cash value of any depositor, creditor, or other person in interest, who shall not have approved the plan, and have made the specified application for the fair liquidating value of claim or other interest, the court, in the determination of that value on the basis of a judicial liquidation of the company, shall take into consideration, investigate, and value every

asset. If there be rights of actions *ex delicto* or *ex contractu* or by force of statute against any officer, director, or stockholder, the value of that right as an asset must be found and computed in determining the value of the protestant's claim or interest. *Supra: Milner v. Gibson,* 249 Ky. 594, 61 S. W. (2d) 273, 276, 277.

4. While the provisions of the plan do relieve the stockholders of the obligation to pay in full the statutory liability on account of their ownership of the stock, there is no term of the plan that would preclude the enforcement of whatever liability there may be on the part of stockholders or directors for dividends wrongfully declared and received, or for misconduct in office by the directors or officers. Whatever the cause of action of the corporation against stockholder, officer, or director, it was an inchoate asset to be appropriately enforced at law or in equity according to its nature or the remedy specifically provided. *Machen on Corporations,* secs. 1645, 1648, 1649, 1634, 1510, 1519; *Brune on Corporation Law,* sec. 121, p. 154, sec. 122, pp. 155-158, sec. 130, pp. 170, 171; *Fisher v. Parr,* 92 Md. 245, 48 A. 621; *Emerson v. Gaither,* 103 Md. 564, 64 A. 26; *Gaither v. Bauernschmidt,* 108 Md. 1, 69 A. 425; *Murphy v. Penniman,* 105 Md. 452, 66 A. 282; *Thomas v. Penniman,* 105 Md. 475, 66 A, 291; *Foutz v. Miller,* 112 Md. 458, 76 A. 1111; *Gill v. Ash,* 124 Md. 612, 93 A. 210, 212; *Bartlett v. Smith,* 162 Md. 478, 160 A. 440, 161 A. 509; Code, art. 11, secs. 70, 71, as repealed and re-enacted by Acts of 1933, ch. 528. The plan purports to dedicate all the assets of every kind, except the double liability of the stockholder, to the payment of the depositors and creditors in full. With the exception noted, the action of the chancellor in dismissing the petition of James E. Hancock and others, and in approving the plan of reorganization, does not justify the inference that the chancellor had adjudged that, upon cause being shown, he would not authorize and require the receiver to enforce the liability of any officer, director, or stockholder.

It is the conclusion of this tribunal that, at the time of his decrees, the chancellor was primarily concerned with the determination of his power to approve the plan of reorganization and the form in which it was cast; and that the chancellor was not convinced, by the information then available on the pleadings, that it was either necessary or expedient to consider and pass upon the action to be taken by the receiver with respect to the rather general charges made against the stockholders, directors, and officers of the corporation. It is indisputable that the chancellor made no express reservation in this regard, although he mentioned that this relief was sought, but his decree of January 2nd clearly did not contemplate the immediate discharge of the receiver, because the approval was made subject to the right of revocation, and the effectuation of the contemplated loan with the Reconstruction Finance Corporation within ninety days from December 7th, 1934. The receivership was further continued for the determination of several minor matters as to fees, and for the ascertainment of the liquidation value of the dissenting depositor's claim against the company. All these recited reservations were declared to be "under the terms of future orders of" the chancellor. Thus, the decree is so provisional that it is not a final decree, and the questions on this record do not arise upon the appeal from the decree of court conditionally approving the plan, but upon the appeal from the decree dismissing the petition of James E. Hancock and others. However, the court has resorted to the decree conditionally approving the plan as tending to confirm the conclusion that the chancellor did not intend to foreclose the question of the enforcement of whatever demands, independently of those on account of the double liability as stockholders, there might exist against any officer, director, or stockholder. So, the court concludes that the plan approved by the chancellor contemplates that, aside from the enforcement in full of the double liability of the stockholders, if it should appear to the chancellor that there is a cause of action of the company against any

officer, stockholder, or director for any other statutory claim, breach of duty, wrongdoing, or neglect, it will become the chancellor's plain duty to see that this cause of action be enforced, assigned, transferred, or otherwise liquidated in the interest of the insolvent's estate.

For the reasons stated, no error is found in either of the decrees; and the decree of December 17th, 1934, dismissing the petition of James E. Hancock and others, will be affirmed. Since the decree of January 2nd, 1935, is not final, the appeal from it will be dismissed.

> *Decree of December 17th, 1934, dismissing.*
> *the petition of James E. Hancock and*
> *others, affirmed; and appeal from decree*
> *of January 2nd, 1935, dismissed. The*
> *costs in both appeals to be paid by the*
> *appellants.*