In re AMPAT SOUTHERN
CORPORATION, Debtor.

George W. LIEBMANN,
Trustee, Plaintiff,

v.

F. Michael PUCCI, Defendant.

Bankruptcy No. 86–B–0257–JS.
Adv. No. 88–0023B.

United States Bankruptcy Court,
D. Maryland.

June 4, 1991.

George W. Liebmann, pro se.

Orbie R. Shively, Baltimore, Md., for plaintiff.

Jack L.B. Gohn, Kimberly A. Manchester, Whiteford, Taylor & Preston, Baltimore, Md., for defendant.

### MEMORANDUM OPINION DISMISSING COMPLAINT

JAMES F. SCHNEIDER, Bankruptcy Judge.

The issue in this case is whether a cause of action was sufficiently stated by a complaint filed by the bankruptcy trustee of a debtor corporation to , recover fraudulent transfers, preferences, and/or damages from one who as both officer and director of the corporation allegedly caused funds of the debtor to be transferred to the debtor's corporate affiliate within one year before the filing of the bankruptcy petition. The Court finds that the complaint must be dismissed on two grounds: (1) the complaint, which is based upon Sections 542, 543, 547, 548, 550 and 105 of the Bankruptcy Code and the Maryland Fraudulent Conveyance Act, Md.Com.Law.Code §§ 15–201, *et seq.*, is fatally flawed because it seeks the recovery of preferences or fraudulent conveyances from a non-transferee; and (2) under the agreed facts of this case, the defendant is innocent of the charges made in the complaint that he committed a breach of duty of loyalty and care as an officer and director under Maryland corporation law.

FINDINGS OF FACT

1. The instant bankruptcy case was filed as a voluntary Chapter 11 on February 6, 1986.

2. On March 5, 1986, the case was converted to a liquidation proceeding under Chapter 7 and George W. Liebmann was appointed Chapter 7 trustee [P. 20].

3. The debtor, Ampat/Southern Corporation, was a wholly-owned subsidiary of Ampat Group, Inc., which in turn was a wholly-owned subsidiary of GEMCO National, Inc. The debtor's affiliate was Ampat/Eastern Corporation. The debtor was engaged in the custom design, fabrication and installation of metal and glass products for the construction industry.

4. The trustee sued GEMCO in a complaint filed in this Court [Adv. No. 86–0163B] on June 12, 1986 for turnover of funds in the amount of $719,632 and the avoidance of certain fraudulent transfers in the amount of $2,193,952, among other claims.

5. On July 8, 1987, this Court approved a settlement between the trustee and GEMCO by which the parties agreed that GEMCO would pay to the trustee the sum of $75,000, 67 shares of "letter" stock in GEMCO, amounts received in excess of $105,442 from pending tax refund claims

and funds to be received from Lumbermen's Mutual Casualty Co., [Ampat's surety for certain bonded jobs], estimated to be between $12,000 and $40,000, and certain other funds, in return for which the trustee agreed to dismiss the complaint against GEMCO and covenanted not to sue any of the then-directors and officers of GEMCO or the debtor's affiliate, Ampat/Eastern Corporation, or its estate. The trustee expressly reserved the right to sue F. Michael Pucci "based on the same losses and against a large directors' and officers' liability insurance policy covering him." Notice of settlement [P. 14] dated December 19, 1986.

6. Pursuant to the settlement terms, GEMCO paid the trustee $252,187.50.

7. On February 3, 1988, the trustee filed the instant complaint against F. Michael Pucci. The complaint is entitled "COMPLAINT TO RECOVER FRAUDULENT CONVEYANCES AND TRANSFERS AND DAMAGES FOR BREACH OF FIDUCIARY DUTY."

8. The complaint alleged that the defendant was, at various times, "a manager, officer and director for Ampat Southern Corporation" who "counseled and caused the debtor to transfer certain monies to other insiders and affiliates, including Am-

pat Eastern Corporation at a time when Ampat Southern Corporation was insolvent or was rendered insolvent by such transfers ..." Complaint, paragraph 4. The amount of such transfers was alleged to have been $2,193,952 in 1985. Additionally, the defendant was charged with having "refrained ... from collecting $719,632 standing to Ampat Southern's credit on the books of GEMCO National, Inc." *Id.*

9. The complaint charged that "[s]uch transfers were made of the debtor's assets with actual intent to defraud creditors of the debtor," that "such transfers were made for the benefit of Ampat Eastern Corporation and/or GEMCO National Corporation [sic]," that these transfers "did not involve dishonesty or personal profit on the part of [Mr.] Pucci, but were made for his benefit as an officer and director of the transferees." *Id.*, paragraph 5. The making of such transfers was alleged to have been "in breach of [Mr.] Pucci's duty of loyalty and care as an officer and director of debtor." *Id.*, paragraph 6.

10. The complaint cites as its authority Bankruptcy Code Sections 542, 543, 547, 548, 550 and 105.

## CONCLUSIONS OF LAW

■ 1. Sections 542 [1] and 543 [2], which require turnover of property of the bank-

1. Section 542 provides:

§ 542. Turnover of property to the estate.
(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.
(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a

debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.
(d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.
(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to to

2. See note 2 on p. 408.

ruptcy estate to the trustee are not applicable to this complaint because it is not alleged that the defendant is in possession of such property. Section 547 [3] permits the

[sic] turn over or disclose such recorded information to the trustee.

11 U.S.C. § 542 (1988).

2. Section 543 provides:

§ 543. Turnover of property by a custodian.

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, of proceeds, product, offspring, rents, or profits of such property that, at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall—

(1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) After notice and hearing, the bankruptcy court—

(1) may excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

(2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date

of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

11 U.S.C. § 543 (1988).

3. Section 547 provides:

§ 547. Preferences.

(a) In this section—

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) Intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

bankruptcy trustee to avoid preferences and Section 548 [4] provides for the avoid-

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 10 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

(B) the date on which new value was first given under the security agreement creating such security interest;

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title; or

(7) if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600.

(d) The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purpose of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purpose of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under sub-section (c) of this section. 11 U.S.C. § 547 (1988).

4. Section 548 provides:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay,

ance of fraudulent transfers. Section 550[5] provides for the recovery of the property

or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equiv-alent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a trans-action, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

(b) The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferrd that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

(2) In this section—

(A) "value" means property, or satisfaction or security of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

(B) a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency that receives a margin payment, as defined in section 101(34), 741(5) or 761(15) of this title, or settlement payment, as defined in section 101(34) or 741(8) of this title, takes for value to the extent of such payment; and

(C) a repo participant that receives a margin payment, as defined in section 741(5) or 761(15) of this title, or settlement payment, as defined in section 741(8) of this title, in connection with a repurchase agreement, takes for value to the extent of such payment.

(D) a swap participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer.
11 U.S.C. § 548 (1988).

5. Section 550 provides:

§ 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

(e) An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or

from a transferee, after the avoidance of the transfers pursuant to Sections 544–549, 553(b) or 724(a). Section 105 [6] is the provision which empowers the bankruptcy court to take whatever action is required to effectuate the provisions of the Bankruptcy Code.

2. To the extent that the instant complaint seeks the recovery of property of the debtor from this defendant which he allegedly caused to be transferred to another, the complaint is defective. A number of courts have held that a bankruptcy trustee cannot recover fraudulent transfers from other than the transferees. *Elliott v. Glushon*, 390 F.2d 514 (9th Cir.1967); *Robinson v. Watts Detective Agency*, 685 F.2d 729 (1st Cir.1982). Because it is alleged that the defendant personally received none of the property transferred, he has no liability for its return as a matter of law under the sections of the Bankruptcy Code cited in the complaint.

3. The trustee may not do indirectly what he cannot do directly. If it is acknowledged that the trustee may not recover fraudulent transfers from a non-transferee, then it follows that he may not recover funds in the same amount by the mere expedient of referring to them by a different name, i.e. "damages." The amount sought from the defendant *as damages* is the exact same amount sought from him as the sum of fraudulent conveyances, namely $2,661,396.50 ($2,193,952 + $719,632 less the $252,187.50 paid to the trustee by GEMCO).

4. The trustee cannot prevail in his attack based upon the defendant's alleged breach of duty. There is no evidence to support such a charge. Mr. Pucci was acting on orders of GEMCO National, Inc., the debtor's parent corporation, (with which the trustee settled his complaint for avoidance of fraudulent transfers and turnover of funds totalling some $2,913,584 in return for the payment of $252,187.50).

5. The complaint acknowledges that Mr. Pucci derived "no personal profit" from these transfers, but that he received an indirect benefit "as an officer and director of transferees." If this is true, then the other officers and directors of GEMCO, who the trustee covenanted not to sue upon the payment to him by GEMCO of $252,-187.50, should also be subject to suit. However, in reality, the kind of indirect benefit which the trustee claimed was received cannot be shown, according to the following hypothetical. A, who is a director of X Corporation, transfers $1 from the funds of X Corporation to its affiliate, Y Corporation, of which A is also a director. Result: No net benefit to A. In any event, the failure of the complaint to allege any personal benefit to Mr. Pucci is merely one more reason to dismiss it for failure to state a cause of action.

6. At the hearing held on February 12, 1991, counsel for the trustee candidly acknowledged that Mr. Pucci had indeed made efforts to collect $719,632 from GEMCO, effectively negating the trustee's charge that Mr. Pucci "refrained and forebore from collecting $719.632 standing to Ampat Southern Corporation's credit on the books of GEMCO National, Inc."

7. The agreed facts belie the trustee's allegation that transfers were made "with

---

(2) the time the case is closed or dismissed. 11 U.S.C. § 550 (1988).

**6.** Section 105 provides:
§ 105. Power of court.
(a) The court may issue any order, process, or judgment that is necessary or appropriate *to carry out the provisions of this title.* No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.
(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be *interpreted to exclude bankruptcy judges and* other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.
11 U.S.C. § 105 (1988).

actual intent to defraud creditors of the debtor." All of the facts on file show that transfers were made to help the debtor's affiliate, Ampat Eastern and the debtor's parent, GEMCO National, Inc., and not for any fraudulent purpose.

8. The final blow to the trustee's complaint is a Maryland case, *Burkhart v. Smith*, 161 Md. 398, 157 A. 299 (1931), which held that one who was director, president and majority stockholder of a bankrupt corporation was not personally liable to the bankruptcy trustee for transferring corporate assets to another corporation of which he was also majority stockholder, president and director, where the defendant derived no personal profit from the transfer and was motivated solely by a desire to aid his other ailing enterprise. The Maryland Court of Appeals stated:

> Smith was in the position of a trustee or agent of the Chesapeake Company, and his liability, if any, must rest upon a finding of waste of the assets by what has been described as "fraud or malfeasance, or such gross negligence as may amount to a breach of trust," "by gross negligence and inattention to the duties of their trust," or by failure to exercise " 'the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs' under like circumstances." *Booth v. Robinson*, 55 Md. 419; *Fisher v. Parr*, 92 Md. 245, 264, 48 A. 621, 623; *Gill v. Ash*, 124 Md. 612, 619, 93 A. 210, 212. The measure of care and prudence required can hardly be defined accurately, and so as to furnish the solvent for all controversies in particular cases of complaints against officers and directors. It is plain, however, that the law does not make an officer or director liable to repay losses caused by any and every departure from what the court, after the event, might consider to be good judgment. There must be something more. If there is no conscious betrayal of the trust reposed, there must be such neglect or misconduct as amounts to a betrayal of the trust. And we concur with the judge of the lower court in his finding that the facts presented in this case do not justify a finding of either fraud or negligence, or misconduct of the kind described.

157 A. at 301.

From the foregoing analysis, and based upon all of the pleadings, memoranda and transcripts filed herein, this Court concludes that the defendant's motions for summary judgment and for dismissal ought to be granted and the instant complaint is accordingly dismissed.

ORDER ACCORDINGLY.