## STATE OF MARYLAND

*vs.*

### MARTHA A. WINGERT, ET AL.

### MARTHA A. WINGERT, ET AL.,

*vs.*

### HENRY P. WINGERT, ET AL.

*Resulting trusts: collateral inheritance tax; injunction against
collection; State not to be made a party;
protection for administrators.*

The general rule is that where the purchase price is paid by
one person and the title taken in the name of another, a result-
ing trust arises in favor of the person paying the purchase
money.                                                    p. 608

Where certain children had purchased several adjacent prop-
erties with their own money, but for the purpose of extin-
guishing certain easements, and had the title to the same placed
in the name of their mother, a resulting trust arises in favor
of the children, and upon the mother's death such property
does not form any part of the mother's estate.          p. 610

Where, through adverse possession of at least forty years, a
man acquired title to certain property, and several of his chil-
dren erected houses upon it, at his death intestate the title
thereto devolves upon his children, and upon the death of any
one of them intestate the collateral inheritance tax is due upon
the shares that the brothers and sisters inherit from the one so
dying.                                                    p. 611

In a suit to enjoin the collection of a collateral inheritance
tax, it is not proper to make the State a party.         p. 611

The State, by reason of its prerogative as a sovereign and on
the ground of public policy, can not, without its consent, be
made a party to a suit.                                  p. 611

Where administrators are enjoined from collecting a collateral inheritance tax, they will be protected from any action that the State might afterwards take against them for their failure to collect such tax, but an injunction against the State should not be granted. **p. 611**

*Decided April 11th, 1918.*

Cross-appeals from the Circuit Court for Washington County. (In Equity.) (KEEDY, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Ogle Marbury, Assistant Attorney-General* (with whom was *Albert C. Ritchie, Attorney-General,* and *Omer T. Kaylor, State's Attorney for Washington County* on the brief), for the State.

*H. R. Spessard* (with whom was *Miller Wingert* on the brief), for Martha Wingert, *et al.*

CONSTABLE, J., delivered the opinion of the Court.

The property, about which these cross appeals is concerned, has been before this Court on four former appeals, this being the fifth. The former cases are reported in 125 Md. 536; 127 Md. 80; 129 Md. 28, and the last to be reported in 132 Md.

The present appeals were taken from a decree passed upon a bill filed to restrain the administrators of P. Hager Wingert from enforcing the collection of collateral inheritance tax on certain real property mentioned in the bill in paragraphs four and five thereof.

The Court below ordered that the administrators aforesaid and the State of Maryland show cause on or before a certain day why the injunction should not be issued, and pending

the determination of the relief as prayed, issued a preliminary injunction restraining the administrators from collecting or attempting to collect the tax. On the hearing the Court decreed that as to the property described in the fourth paragraph, the preliminary injunction be made perpetual upon the administrators, and the State; but as to the property described in paragraph five, decreed that the preliminary injunction be dissolved. An appeal was taken by the State from that part of the decree perpetually enjoining the State and the administrators from collecting the tax on the property mentioned in paragraph four, and the heirs at law, excepting the administrators, appealed from the portion refusing the injunction as to the property mentioned in paragraph five of the bill.

The bill alleged that the administrators were attempting to collect collateral inheritance tax on certain property of which it was claimed that P. Hager Wingert died seized and possessed, intestate, unmarried and without issue, leaving as his heirs at law six sisters and brothers. The property mentioned in the fourth paragraph of the bill, upon which it was claimed by the complainants that no tax was due or collectible, was property for which the record title stood in the name of Eliza J. Wingert, the mother of P. Hager Wingert, and who had died intestate, leaving seven children, including P. Hager Wingert, surviving her as her only heirs at law, and to whom the property descended in equal shares if owned by her. The property mentioned in the fifth paragraph of the bill, was property in which it was alleged there was no record title in P. Hager Wingert, nor in the name of any of the antecedents of P. Hager Wingert through whom he could have inherited, nor any other title which would subject the property to the payment of the collateral inheritance tax.

The only question presented as to the properties in the fourth paragraph of the bill are whether Eliza J. Wingert at the time of her death absolutely owned the properties, or,

although the legal title stood in her name, as a fact did she hold the same as trustee for her six children to the exclusion of P. Hager Wingert. If she owned the properties absolutely, or held them for the benefit of all her children, including P. Hager, then, of course, at her death intestate, P. Hager was entitled to a one-seventh interest, and upon his death, intestate, unmarried and without issue and seized and possessed of said interest in the properties, the collateral inheritance tax would be payable by its heirs at law.

It was upon the theory that Mrs. Wingert held the properties as trustee for the benefit of six of her children, not including P. Hager, and that he held no interest whatever in them, that the bill was filed.

The real question then is—did Mrs. Wingert hold the legal title to the properties with a resulting trust, for the benefit of six of her children? Very recently has the question of what is essential to effect such a trust been so carefully and so exhaustively considered by this Court, where, in the opinion by JUDGE BURKE in *Dixon* v. *Dixon*, 123 Md. 45, practically all of the decisions of this Court were reviewed, together with many other authorities, that we deem it idle to review them further than to state the conclusion as to the rules of law therein reached by this Court: "The general rule is well settled that when the purchase price is paid by one person and the title is taken in the name of another a resulting trust arises in favor of the person paying the purchase money, and the holder of the legal title becomes a trustee for him. There are, however, exceptions to this general rule: Thus, where a person purchases land and pays the consideration with his own money, but causes the title to be placed in the name of one to whom the purchaser is under a natural or moral obligation to provide, such as in the case of parent and child, or husband and wife, no presumption of a resulting trust will arise, but it will be regarded *prima facie* as a gift or an advancement for the benefit of the nominal purchaser. In either case, the presumption is one of

fact and not of law, and the real intention of the parties to the transaction may be shown, and the Court will give it effect if it does not contravene some rule of property or the policy of the law. If a husband purchases real estate in his own name with money furnished by his wife from her separate estate, a resulting trust in her favor arises by implication of law. The authorities are practically unanimous in support of these propositions."

P. Hager Wingert died in July, 1913. His father, Philip H. Wingert, had died in 1898. After the death of the father, the children, other than P. Hager, began to purchase properties in the City of Hagerstown and farms in Washington County, until they had acquired six properties in all. P. Hager Wingert, for a period of thirty years prior to and until his death had been a helpless invalid, unable to attend to business of any kind whatever and without knowledge of the purchases. Eliza J. Wingert was also a great invalid and knew nothing of the purchases nor that the properties had been placed by the actual purchasers in her name for matter of convenience. The whole scheme of placing the properties in the name of the mother seems to have originated from the fact that one of the sons wished to buy a property adjoining a property which belonged to the estate of the father—Philip H. Wingert. There was a right of way over a portion of an alley between the properties, attached to the property wished to be acquired. One of the sons was about to take title to it in his own name when it was suggested that if the titles were unified the easment would be gotten rid of, and for that reason the title was taken in the name of Eliza J. Wingert. From this beginning it followed that all the titles were similarly placed.

It appeared from the testimony clearly that not only did Mrs. Wingert not know that the titles had been so placed, but that she received no benefits from the properties by way of rents, etc., and in fact claimed none. The purchase money for the same, the testimony plainly shows—the cancelled checks for the purchase money being produced—was fur-

nished by the children, other than P. Hager Wingert. It is true that some of the checks were drawn upon the bank account standing in the name of Philip H. Wingert's heirs, and although it is admitted that P. Hager Wingert had an interest in this fund, yet it is proven that any money that was his under these payments was returned to his estate through an agreement made with the State's Atorney for Washington County, and subjected to the collateral inheritance tax. But, as we have said, he knew nothing of the purchases and, of course, could not have known of the placing of the titles in the name of his mother.

In all species of resulting trusts, intention is an essential element. *Walsh* v. *McBride,* 72 Md. 45.

Without discussing in detail the purchase of each separate property, we are satisfied that the proof is clear and convincing that these purchases were made and paid for by the six sons and daughters, not with any intention upon their part that they should be considered as advancements or gifts but with the intention that the equitable title should be in them.

Being of the opinion that P. Hager Wingert had no interest in the properties, it follows that no collateral inheritance tax could be collected from the holders of the Wingert heirs.

In reference to the property mentioned in the fifth paragraph of the bill, we have reached a contrary conclusion. The testimony as to it shows that there is no record title to it in any of the Wingerts, but it dose appear that the elder Wingert took possession of and occupied this property by adverse possession for at least forty years, and that upon his death it descended through this title to his seven sons and daughters and that up to the present they have continued to so hold it. Prior to the death of the father and afterward two of the sons erected, without his knowledge, houses upon this property paying for a portion of the materials out of their father's income. There can be no question that if these sons erected these houses and improvements in full possession of the facts that P. Hager Wingert owned as great an interest as either of them in the land that the improvements would inure to

the benefits of all the owners of the fee. Therefore, the one-seventh interest P. Hager Wingert had in this property would descend to his heirs at law and they should pay the collateral inheritance tax on the appraised one-seventh value of the property.

By Section 132 of Article 81 of the Code, it is made the duty of every administrator or executor to collect and pay over to the Register of Wills, for the use of the State, the collateral inheritance tax due. The bill in this case evidently proceeded upon this theory, for the only prayer of the bill was to enjoin the administrators from collecting the tax. They did, however, join the State as a party defendant. The lower Court in granting the preliminary injunction only enjoined the administrators, but did require the State to show cause why the injunction should not be issued. After the hearing, the Court, in its decree, did enjoin both the administrators and the State from collecting the tax on the properties described in paragraph four of the bill. Therefore, although, as we have said above in this opinion, the tax was not payable on the properties, nevertheless, it was not proper to enjoin the State nor to make it a party defendant.

The State, without its consent, cannot be made a party to a suit, by reason of its prerogative as a sovereign and on grounds of public policy, since the Act of 1820, Ch. 210, which repealed the Act of 1786, Ch. 53. *State v. B. & O. R. R. Co.,* 34 Md. 344. The administrators will be protected from any action taken against them by the State in the future for failure to collect the tax on properties in paragraph four by reason of the injunction issued against them, but the injunction against the State must be revoked.

> *Decree affirmed in part and reversed in part, and cause remanded for further proceedings, the costs to be paid out of the estate of P. Hager Wingert.*