# FRANK O. SINGER, JR.,

*vs.*

# MARY BYRD WYMAN MEMORIAL ASSOCIATION.

*Special Act of Incorporation—Validity—Adverse Possession.*

Since the general incorporation act then in force limited the duration of corporations formed thereunder to forty years, a special act of incorporation passed in 1884, which gave the corporation so created the power to perpetuate its existence, was within the exception to Const. 1867, Art. 3, sec. 48, which declares that private corporations shall not be created by special act "except in cases where no general laws exist, providing for the creation of corporations of the same general character as the corporation proposed to be created."                pp. 406, 407

A charitable corporation having been in exclusive, continuous, and adverse possession of certain property for thirty-six years prior to the filing of a bill by it for the specific performance of a contract to purchase such property, and having throughout that time used and enjoyed the property for the purposes for which it was incorporated, *held* that it could convey a good and marketable title and was entitled to a decree.         pp. 408-410

*Decided April 8th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Harry E. Silverwood,* for the appellant.

*A. Morris Tyson* and *Carlyle Barton,* for the appellee.

THOMAS, J., delivered the opinion of the court.

On the 5th of March, 1883, Samuel G. Wyman, of Baltimore City, Maryland, executed and delivered to William W. Taylor and others the following deed, which was duly recorded among the Land Records of Baltimore City:

"This deed made this fifth day of March, in the year eighteen hundred and eighty-three, by Samuel G. Wyman, of Baltimore City, Maryland. Whereas during her lifetime my wife, Mary Byrd Wyman, was deeply interested in the Christian education of the young and to this object devoted much of her time and means, and it is my desire to provide for the continuance of her work and to establish as a fitting memorial to her a permanent fund the income from which shall be employed for this purpose. Now, therefore, I, Samuel G. Wyman, of the City of Baltimore, in consideration of the premises and of the sum of five dollars do grant, bargain, sell and convey unto William W. Taylor, William Keyser, Skipwith Wilmer, H. Irvine Keyser, and Charles F. Taylor and the survivors or survivor of them and the successors and assigns of such survivor, all those several pieces or parcels of ground situate and lying in the City of Baltimore, State of Maryland, and described as follows: Beginning for the first of said pieces or parcels of ground on the east side of Park Avenue at the distance of thirty-five feet seven and one-fourth inches from the corner formed by the intersection of the east side of Park Avenue and the southeast side of Tyson, now Chase, Street, and running thence southerly binding on the east side of Park Avenue one hundred and eighty feet to the northeast side of Tyson Alley; thence southeasterly along the line of said alley sixty-two feet seven and one-fourth inches until it intersects the north side of Eager Street; thence easterly and along said north side of Eager Street thirty-seven feet to the west side of Fulton Alley; thence northerly and binding on said west side of Fulton Alley two hundred and seventeen feet ten and one-fourth inches to the south line of the small piece of

ground conveyed by Laura Lee Capron and Richard
I. Capron to William H. S. Burgwyn; thence westerly
along said line forty-five feet more or less to the place
of beginning. Being the same property which was con-
veyed to Samuel G. Wyman by Laura Lee Capron and
Richard I. Capron by deed dated June 30th, 1879, and
recorded among the Land Records of Baltimore City in
Liber F. A. P. No. 844, folio 420, &c. Beginning for
the second of said parcels or pieces of ground at the
corner formed by the intersection of the east side of
Park Avenue and the southwest side of Tyson Alley,
and running thence southeasterly binding on said south-
west side of Tyson Alley twenty-seven feet six inches
more or less to the north side of Eager Street; thence
westerly binding on the north side of Eager Street
twenty-one feet five inches more or less to the east side
of Park Avenue; thence northerly on the east side of
Park Avenue twenty feet seven and one-half inches to
the place of beginning. Being the same piece or parcel
of ground which was conveyed to Samuel G. Wyman
by John Eschbach by deed dated August 6th, 1881,
and recorded among the Land Records of Baltimore
City in Liber F. A. P. No. 906, folio 200, &c., and
also all the right, title, interest and estate of Samuel
G. Wyman in, unto and out of the bed of Tyson Alley
as awarded to him by the Commissioners for Opening
Streets acting under the provisions of the ordinance of
the Mayor and City Council of Baltimore, entitled
'An Ordinance to condemn and close Tyson Alley,
between Park Avenue and Eager Street,' approved the
seventeenth day of October, 1881, and beginning for
the third of said pieces or parcels of ground at the
corner formed by the intersection of the southeast side
of Tyson Street and the west side of Park Avenue, and
running thence southwesterly along the line of Tyson
Street seventy-one feet four and three-fourths inches
more or less to the corner formed by the intersection
of said southeast side of Tyson Street and the north
side of Tyson Alley; thence southeasterly along the

north side of Tyson Alley sixty-four feet three inches
more or less to the building line on Park Avenue, and
thence northerly along said building line on Park Ave-
nue ninety-two feet two inches more or less to the
place of beginning. Being the same property the lease-
hold interest in which was assigned to Samuel G. Wy-
man by Elizabeth Martin by deed of assignment dated
April 1st, 1881, and recorded among the Land Records
of Baltimore City in Liber F. A. P. No. 894, folio 77,
&c., and the reversion in which was conveyed to Sam-
uel G. Wyman by Rebecca H. Kilpatrick, trustee, by
deed dated April 26th, 1881, and recorded among the
Land Records of Baltimore City in Liber F. A. P. No.
896, folio 46, &c. Together with all the buildings and
improvements on said pieces or parcels of ground, and
the rights, ways, privileges and appurtenances belong-
ing or in any wise appertaining to any or all of said
pieces or parcels of ground. To have and to hold each
and all of the above described pieces and parcels of
ground unto the said William W. Taylor, William
Keyser, Skipwith Wilmer, H. Irvine Keyser, and
Charles F. Taylor and the survivors or survivor of
them and the heirs, personal representatives and as-
signs of such survivor and their successors as herein-
after provided upon the following uses and trusts:
First, to collect the rents, issues and profits upon the
said property and to apply so much thereof as may be
necessary for the payment of taxes, insurance, ground
rents and repairs for the proper maintenance of the
property hereby granted, and for defraying the neces-
sary expenses of the trust, so that at all times the prop-
erty and the rents issuing therefrom may be insured
and the whole kept in its most profitable and produc-
tive condition; secondly, to apply the surplus income
from the said property or so much thereof as in each
year they may deem expedient to defraying the expenses
of the education and maintenance of such children as
the said trustee or a majority of them may select as
proper recipients of the benefit of this trust; third, to

fill any vacancy in their number created by death or otherwise from among the laymen who are communicants in the Protestant Episcopal Church and reside in the City of Baltimore, and to execute any instrument that may be necessary to perpetuate the title in the trustees and their successors so to be selected, and upon the further trust that the said trustees shall apply to the General Assembly of Maryland for an act incorporating them and their successors under the name of the Mary Byrd Wyman Memorial, with a grant of the rights and powers necessary to carry out the trust hereby created, and when the said act has been passed in trust to convey to the said corporation all the property hereby conveyed upon the trusts herein contained. It is my desire that the benefits of this fund shall be applied so far as the same may meet with the approval of the Trustees to the children of clergymen of the Protestant Episcopal Church resident in the States of Maryland and Virginia, and that their education shall be conducted at such institutions as conform to the faith and liturgy of the Protestant Episcopal Church, but this expression of my wishes is intended only for the assistance of the Trustees and is in no respect to control or restrict the full and complete discretion and authority which they and their successors shall forever have and exercise as to the persons to be educated and the manner in which their education and maintenance shall be assisted. In testimony whereof I have hereunto set my hand and affix my seal this fifth day of March, 1883.

"Saml. G. Wyman (Seal).

"Witness: I. Howard.

"State of Maryland, Baltimore City, to wit—

"Before the subscriber, a Justice of the Peace of the State of Maryland in and for the City of Baltimore, personally appeared in said city this fifth day of March, 1883, Samuel G. Wyman, whose name is signed to the foregoing instrument, and acknowledged the said instrument to be his act and deed.

"I. Howard, J. P."

In pursuance of the directions contained in said deed the trustees therein applied to and obtained from the General Assembly of Maryland Chapter 262 of the Acts of 1884 incorporating the Mary Byrd Wyman Memorial Association of Baltimore City as follows:

"An Act to incorporate 'The Mary Byrd Wyman Memorial Association of Baltimore City.'

"Whereas, The late Samuel G. Wyman, of Baltimore City, by deed duly executed and recorded, granted to William W. Taylor, William Keyser, Skipwith Wilmer, H. Irvine Keyser, and Charles F. Taylor, certain real and leasehold property, situated in said city, in trust, to create a fund for educational purposes, to be known as 'The Mary Byrd Wyman Memorial,' and to receive the rents, incomes, issues and profits of the said property, and apply the same to the assistance and education of such persons as the said trustees may select; and whereas for the purpose of effectually carrying out the objects of the trust as expressed in said deed, the said trustees have prayed to be incorporated, and such prayer appears reasonable.

"Section 1. Be it enacted by the General Assembly of Maryland, That William W. Taylor, William Keyser, Skipwith Wilmer, H. Irvine Keyser and Charles F. Taylor be and they are hereby constituted a body corporate, under the name of 'The Mary Byrd Wyman Memorial Association of Baltimore City,' for the purpose of receiving, holding and dispensing a fund for the assistance, education or maintenance of such persons as the said corporation may select as recipients of the benefits thereof; and the said body corporate is hereby authorized and empowered to take, hold, transmit and convey, the property described and granted in a deed dated the fifth day of March, in the year eighteen hundred and eighty-three, and recorded among the Land Records of Baltimore City in Liber R. J. A., number nine hundred and seventy-three, folio nine, etc., from Samuel G. Wyman to the said William W. Taylor, William Keyser, Skipwith Wilmer, H. Irvine Key-

ser and Charles F. Taylor; and also any other real or personal estate which it may purchase or otherwise acquire for the purposes of its incorporation, and to make any contract in reference thereto; to sue and be sued, plead and be impleaded, in all courts and places whatsoever, and in all manner of suits and actions; to have a common seal, and to alter and change the same at pleasure; to appoint such officers and employ such agents as it may require for the conduct of its affairs and the management of its property, and to adopt such by-laws and rules as may be needful for its government; to provide for and regulate the succession of its members, and to perpetuate its existence.

"Sec. 2. And be it further enacted, That this act shall take effect from the date of its passage.

"Approved April 8, 1884."

In further execution of the provisions of said deed the trustees therein named, by deed dated the 19th day of November, 1884, and recorded among the Land Records of Baltimore City, conveyed all of said property to said corporation, "its successors and assigns in fee simple" for the purposes set forth in said deed of March 5th, 1883, and said act of incorporation. On the 1st of May, 1920, the Mary Byrd Wyman Association, by an agreement in writing and duly executed by the parties thereto, sold the properties described in said deeds for $145,000 to Frank O. Singer, Jr., of Baltimore City, Maryland, who agreed to purchase the same and paid $5,000 on account of the purchase price, but who later refused to complete the purchase in accordance with said agreement on the ground that said association could not give him a good and marketable title to the property. On a bill filed by the association, the Circuit Court No. 2 of Baltimore City, upon the pleadings and evidence in the case, decreed specific performance of the contract of sale, and the present appeal is from that decree.

It appears from "the agreed statement of facts", filed in the case:

"That in pursuance of Ordinance No. 113 of the Mayor and City Council of Baltimore, approved October 17th, 1881, the Commissioners for Opening Streets took appropriate proceedings for the closing of Tyson Alley, between Park Avenue and Eager Street. Damages were assessed in the usual form to Samuel G. Wyman, or to such person or persons as might be legally entitled thereto, as the owner or owners of the property on each side of the alley so closed, and benefits were assessed in the usual form against Samuel G. Wyman or such person or persons as might be legally liable therefor for the acquisition of the bed of the alley free from the public easement. The total amount of damages plus the expense of the proceedings equaled the amount of benefits. The records of the City Comptroller's office show that these benefits were paid."

Mr. Joseph Packard, who is now president of the Association, and who stated that he had been one of its directors for twenty-two years, testified that the properties in question are the apartment houses known as The Westover, The Brandon, and The Berkley, and eight dwelling houses, "all adjacent to each other, on the northeast corner of Eager Street and Park Avenue, and the Brexton Hotel on Park Avenue and Tyson Street immediately opposite"; that he has known these properties ever since 1881; that they were erected by Mr. Samuel G. Wyman in 1881 and 1882; that there has been no change in the character of the improvements, and that they "occupy the same land" they did originally; that the old bed of Tyson Alley was built upon by Mr. Samuel G. Wyman in erecting said improvements, and that it was and still is entirely covered by the building known as the Westover Apartment; that the entire space on the east side of Park Avenue from Eager Street north to what was formerly the Burgwyn property was covered by the apartment houses and dwellings erected by Mr. Wyman in 1881 and 1882; "it was a solid block," and there is no break in the frontage of said buildings on the north side of Eager Street between Park Avenue and Fulton

Alley; that the association has held the properties in question continuously and adversely, and has been "carrying out the purposes for which it was incorporated," ever since it was incorporated. On cross-examination he testified that from the time of its incorporation "until the present," the association has "managed the property, collected the rents, enjoyed the income therefrom after paying expenses thereon and generally exercised complete ownership of the property without dispute." The testimony of Mr. R. Brent Keyser is substantially to the same effect, and he states that he has known the property ever since Mr. Wyman purchased it; that in erecting the Westover Apartment in 1881 and 1882 Tyson Alley "was built over solidly"; that there has never been any change in the character or location of the buildings since, and that ever since its incorporation the association has "exercised full and complete ownership over the property * * * without any question and without any dispute."

The objections to the title raised by the purchaser are stated in his brief as follows:

"1. The appellee is not a corporation; the act attempting to incorporate it was unconstitutional and void; therefore it has no title to the property it has agreed to sell.

"2. The deed executed by Mr. Wyman was void: (*a*) because the trusts created thereby were indefinite; (*b*) because the trusts created thereby violated the rule against perpetuities.

"3. The appellee has no power to sell or dispose of this property.

"4. The appellee has no title to that part of the property formerly the bed of Tyson Alley."

In support of the first objection to the title, the appellant contends that, as Section 48 of Article 3 of the Constitution of 1867 declares that corporations "shall not be created by special act except for municipal purposes, and except in cases where no general laws exist, providing for the creation of corporations of the same general character as the corporation

proposed to be created," and that "any act of incorporation passed in violation of this section shall be void," and as Section 14 of the Act of 1868 (Rev. Code of 1878, p. 316), in force in 1884, provided for the incorporation of educational, religious and charitable societies or associations, the Act of 1884 was condemned by the Constitution and was therefore void.

Section 37 of the Act of 1868 (Rev. Code of 1878, p. 318), providing what should be stated in the certificate of incorporation, declared that it should contain, among other things, a statement of "the object or purposes for which incorporation is sought, the time of its existence not to exceed forty years, the articles, conditions, and provisions under which the incorporation is formed; *provided,* that the limitation as to duration of existence of corporations formed under this Act shall not apply to gaslight companies." By the Act of 1868 the duration of all corporations incorporated under its provisions, except gaslight companies, was expressly limited to forty years. By the Act of 1884, incorporating the appellee, the Legislature, in order that it might carry out the purpose for which it was incorporated, conferred upon the appellee the express power "to provide for and regulate the succession of its members, and to perpetuate its existence." This power "to perpetuate its existence," without which the purpose of the incorporation of the appellee would have been defeated, was not only not authorized by the general incorporation laws in force at the time but was expressly denied by them. In the case of *Reed* v. *Balt. Trust & Guarantee Co.,* 72 Md. 531, this Court held that Section 48 of Article 3 of the Constitution did not apply where the powers conferred by the special act were not such as could be exercised by a corporation incorporated under the general incorporation laws. As the power conferred upon the appellee by the Act of 1884, "to perpetuate its existence," and to thereby extend its duration beyond forty years, could not have been exercised by a corporation incorporated under the general laws, the Act of 1884

falls within the ruling in *Reed v. Balt. Trust & Guarantee Co., supra,* and is a valid act of incorporation.

2.   While several very interesting questions have been discussed by counsel in connection with the other features of the case, we think all of the remaining objections to the title of the appellee and its power to sell the property in question are, under the facts and circumstances of the case, fully covered and disposed of by the case of *Novak v. Orphans' Home,* 123 Md. 161, where a bill was filed against the purchaser for the specific performance of a contract of sale of two tracts of land in the City of Baltimore.   In that case the testator, Father Dolan, by his will, executed in 1869 and admitted to probate in 1870, attempted to dispose of his property as follows:

> "Item:  I give and bequeath my house and lot on Gough Street to the Young Catholics' Friend Society in the City of Baltimore in trust, not to be sold, for the purpose of establishing a Children's Aid Society. I also leave them one-third of all my property, real, personal and mixed, for the support of the said society.
>
> "Item:  I give and bequeath one-third of my real estate *in trust* to the trustees of the Orphans' Home in Baltimore City, with power and authority to lease said real estate, but not to sell the same, and to use the interest or income of said lease for the following purposes, for the support of the orphan boys and girls belonging to St. Patrick's Parish, Fell's Point (whose parents died within the limits of said parish), in some Catholic orphan asylum or at some Catholic school, said boys and girls to be kept at said asylum or school until twelve years of age and no longer, and then to have said boys and girls bound or placed in some good Catholic families.
>
> "Item:  I give one-third of my real estate to the trustees of St. Patrick's School, in the City of Baltimore, for the purpose of establishing a regular free school for boys and girls, perfectly free schools, and for no other object.   In my bequests of real estate to the Orphans' Home in Baltimore City and to the trus-

tees of St. Patrick's School, in the City of Baltimore,
the house and lot in Gough Street is not included, the
said house and lot being bequeathed by a previous item
to the Young Catholics' Friend Society in the City of
Baltimore, nor is the ground rent on St. Michael's
Church, in the City of Baltimore, of four hundred and
twenty dollars, which has been previously disposed of
in this will, to be included in said bequest to said Young
Catholics' Friend Society, said Orphans' Home or said
St. Patrick's School, in the City of Baltimore. All the
rest and residue and remainder of my estate I give
and bequeath one-third to 'The Trustees of the Or-
phans' Home' in the City of Baltimore; one-third to
'The Trustees of St. Patrick's School' in the City of
Baltimore, and one-third to the 'Young Catholics'
Friend Society' in the City of Baltimore, to be used
for the above named purposes; I hereby authorize my
executors hereinafter named to lease any real estate of
which I may die possessed and execute good and suffi-
cient deed or deeds for the same to any lessee or lessees
who may agree to lease said property or any part
thereof."

The court, after holding that the devises to the Trustees of
the Orphans' Home in Baltimore City and to the Young
Catholics' Friend Society (both of which devisees were incor-
porated prior to the death of the testator) were void because,
among other reasons, they "offended the rule against perpetu-
ities," then said: "From Section 19 of the agreed statement
of facts it appears that almost immediately upon the death of
Father Dolan the several legatees named in his will entered
into possession of the property given or attempted to be given
to them respectively, and from that time to the present have
continued to use the net income received from the said prop-
erties for the respective purposes set out in the will, or as it
is expressed in the bill have been adversely, continuously,
openly and exclusively in possession thereof, and this allega-
tion is not denied by the answer. This allegation and the

agreed statement of facts establishes therefore an exclusive, open, continuous, adverse possession of the property for a period of 41 years prior to the institution of these proceedings, or double the length of time requisite to give a valid title by adverse possession and therefore a title sufficient to warrant a decree for the specific enforcement of a contract for the sale of the property. *Regents* v. *Calvary Church,* 104 Md. 635; *Dickerson* v. *Kirk,* 105 Md. 638; *Mills* v. *Zion Chapel,* 119 Md. 510."

In the case at bar the evidence showing that the appellee has been in exclusive, continuous and adverse possession of the property in question, including that part which was formerly the bed of Tyson Alley, for thirty-six years prior to the filing of the bill in this case, and has throughout that time used and enjoyed it for the purposes for which it was incorporated, is not questioned or disputed, and, as was said by the present Chief Judge in *Dickerson* v. *Kirk, supra,* "there is nothing in the record to suggest anything that could in any way affect its title." The title thus acquired by the appellee by adverse possession is sufficient to enable it to convey a good and marketable title to the appellant, and to entitle the appellee to the specific performance of the contract of sale. In addition to the cases cited above we may refer to the case of *Arey* v. *Baer,* 112 Md. 541; *Amer. Colonization Soc.* v. *Soulsby,* 129 Md. 605; and *Soulsby* v. *Amer. Colonization Soc.,* 131 Md. 296.

In basing our conclusion upon the grounds stated, we are not to be understood as expressing any doubt as to the validity of the appellee's title under the deeds and Act referred to, or its power to convey the property in question under the terms and provisions of said deeds and Act.

*Decree affirmed, with costs.*